**In re The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Debtors.**

**CLARKSON CONSTRUCTION COMPANY, Appellant,**

v.

**The DREXEL BURNHAM LAMBERT GROUP, INC., et al., Appellees.**

**Nos. 90 Civ. 6954(MP), 90 B 10421 (FGC) and 93 Civ. 1029 (MP).**

United States District Court, S.D. New York.

Sept. 8, 1993.

Paul Aloe, Rubin Baum Levin Constant & Friedman, New York City, Mark G. Arnold, Mark G. Flaherty, Husch & Eppenberger, St. Louis, MO, for appellant Clarkson Const. Co.

Peter Gruenberger, David J. Brecher, Weil, Gotshal & Manges, New York City, for appellee Drexel Burnham Lambert Group, Inc., et al.

### OPINION

MILTON POLLACK, Senior District Judge:

Clarkson Construction Company appeals an order of the Bankruptcy Court, Francis

G. Conrad, B.J., disallowing and expunging its claim for prepetition attorneys' fees which are asserted against Drexel Burnham Lambert Group, Inc. ("Drexel") grounded on Missouri Blue Sky Laws pertaining to fraudulent transactions in securities. The Court found that no securities were involved in the transactions of the parties and no liability had been established for any fees as of the date of the filing of the petition.

**Affirmed.**

## I. BACKGROUND

On July 24, 1984, Clarkson opened a corporate commodities trading account (the "Account") with Drexel, which was activated and governed by the standard-form Commodity Customer Account Agreement (the "Account Agreement" or "Agreement"). From the opening of the Account in 1984 to its closing in April, 1989, over 3,000 commodities transactions were executed in the Account. The transactions involved purchases and sales of a myriad of commodities, including gold, silver, platinum, copper, corn, wheat, sugar, yen, soybeans, live cattle, and stock index futures contracts. The transactions were executed on various commodities exchanges, including the Chicago Board of Trade, the Kansas City Board of Trade, the International Monetary Market, the Chicago Mercantile Exchange, and the New York Futures Exchange.[1]

On May, 16, 1989, Clarkson commenced a lawsuit against Drexel in the United States District Court for the Western District of Missouri, claiming it was defrauded of $984,000 by alleged unlawful churning and that 3000 transactions executed in its commodities account were unauthorized. Clarkson included in its complaint a statutory claim for lawyer's fees recoverable in securities transactions under the Missouri Blue Sky laws. *See* Mo.Rev.Stat. § 409.-101, *et seq.* Clarkson claims to have incurred attorneys' fees of $174,978.50 and costs and expenses of $33,493.86 in prosecuting the Missouri action.

On February 13, 1990, prior to any adjudication in the Missouri suit, Drexel filed for protection under Chapter 11 of the Bankruptcy Code, which resulted in staying Clarkson's Missouri action under the automatic stay provisions of § 362 of the Bankruptcy Code. Clarkson thereupon filed a claim against the bankrupt estate for the alleged unauthorized commodity trading including the prepetition lawyer's fees. On Drexel's motion, the prepetition fees claim was expunged and dismissed, resulting in this appeal. Drexel also moved separately for summary judgment of dismissal of Clarkson's unauthorized trading claim. That motion was denied and with leave of court the denial was appealed. The hearings of the two appeals were brought on together. This opinion deals only with Clarkson's claim for prepetition attorneys' fees asserted herein ostensibly under the Missouri Blue Sky statute.

Clarkson's claim for prepetition attorneys fees and costs is premised on the Missouri Revenue Statute § 409.411(a) ("§ 409.411"), which provides:

(a) Any person who (1) offers or sells a **security** in violation of section 409.201(a), 409.301, or 409.405(b), or of any rule or order under section 409.403 ..., or of any condition imposed under section 409.-304(d), 409.305(f), or 409.305(g), or (2) offers or sells a **security** by means of any untrue statement of a material fact or any omission to state a material fact ... is liable to the person buying the **security** from him, who may sue either at law or in equity to recover the consideration paid for the **security**, together with interest at eight percent per year from the date of payment, costs, and **reasonable attorneys' fees,** less the amount of any income received on the **security**, upon the tender of the **security**, or for damages if he no longer owns the **security** .... (emphasis added).

On or about April 24, 1992, Drexel, as well as others similarly situated before the Court, filed an objection to prepetition at-

---

**1.** For a more complete statement of the underlying facts of this case, see this Court's Opinion on

Drexel's appeal from denial of summary judgment, 93 Civ. 4022 (MP) filed August 6, 1993.

torneys' fees and other special damages (the "Objection"). A hearing on the Objection was held on July 24, 1992, at which point the Bankruptcy Court reserved decision and requested further briefing on the prepetition attorneys' fees claims before the Court, each of which were based on state or federal non-bankruptcy statutes rather than contract.

On December 17, 1992, the Bankruptcy Court issued a Memorandum of Decision (the "Opinion") in which it sustained Drexel's objection and disallowed and expunged among others, the Clarkson claim for prepetition attorneys' fees based on the Missouri statute. 148 BR 979. The Court held that:

disposition of this matter is governed by the plain language of § 502(b)(1) of the Bankruptcy Code, which provides that if objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition,* and shall not allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured....

Each statute authorizes an award of reasonable attorneys' fees [only] in the judgment determining the action. Commencement of the Drexel entities' bankruptcy proceedings, and the intervention of the automatic stay, prevented Claimants' pending actions from going forward to judgment. *Accordingly, no determination of Debtor's liability on the underlying action was made, nor was the amount of Claimants' reasonable attorneys fees calculated or awarded....* (Italics supplied).

Our statutory duty is thus to determine the amount of the claims for attorneys' fees "as of the date of the filing of the petition." 11 U.S.C. § 502(b).... Thus, immediately before the Drexel entities' bankruptcy filings, claimants' right to at-

torneys' fees were contingent upon their prevailing in their actions and obtaining an award of attorneys' fees in their judgments. Commencement of the bankruptcy proceedings eliminated the possibility that the contingency would ever come to pass. Accordingly, claimants neither now have nor will they ever have a right to payment of their prepetition attorneys' fees. Without a right to payment, Claimants have no claim. § 101(5)(A).

Thus, we believe it to be ineluctably clear that, as of the filing date, Claimants had no claim to prepetition attorneys' fees. Accordingly, the claim must be denied.

The Opinion concludes by distinguishing the unestablished claims for fees in the present case, from claims for attorneys' fees provided for by contract:

A claim for prepetition attorneys' fees based on a contract which allows a creditor its costs of collection is distinguishable from the claims at issue here. If the language of the contract so provides, the debtor is actually liable for the creditors costs of collection as they are incurred. By contrast, liability for prepetition attorneys fees based on the statutes at issue here are contingent upon the entry of a judgment awarding them. *Commencement of the bankruptcy proceeding eliminates the possibility that the contingency will occur.* (Italics supplied).

On January 7, 1993, the Bankruptcy Court issued an order expunging the proofs of claim for the prepetition statutory attorneys' fees:

WHEREAS the terms of this Order shall apply to all claimants who filed claims for prepetition attorney's fees based upon state or federal statutes which had not been reduced to judgment prior to Debtors filing for Chapter 11; it is therefore

ORDERED that the portion of proofs of claim of claimants ... Clarkson Construction Company ... asserting claims for prepetition attorneys' fees based upon state or federal statutes which had

not been reduced to judgment prior to Debtors filing for Chapter 11 hereby are disallowed and expunged; and it is

FURTHER ORDERED that any and all proofs of claim, or portions thereof, of any other claimants which assert claims for prepetition attorneys' fees based upon state or federal statutes which had not been reduced to judgment prior to Debtors filing for Chapter 11 hereby are disallowed and expunged.

On January 15, 1993, Clarkson filed its notice of appeal from that order.

## II. ANALYSIS

### A. *Standard of Review:*

■ The Bankruptcy Court's rulings of law with respect to the claim under the Missouri statute for prepetition attorneys fees is subject to *de novo* review. *See In re PCH Assocs.*, 949 F.2d 585, 597 (2d Cir.1991).

### B. *The Missouri Statute § 409.411:*

■ Clarkson's claim for prepetition attorneys' fees falls at the threshold as a matter of law under the clear and express statutory scope of § 409.411. As quoted above, the statute provides that liability for attorneys' fees is assessable against one who "offers or sells a security." None of the transactions sued on by Clarkson in this case involved the offer or sale of a "security," as defined by the Missouri law.

Missouri law defines a "security" as follows:

"Security" means any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agree-ment; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; limited partnership interest; voting-trust certificate; certificate of deposit for a security; certificate of interest or participation in an oil, gas, mining title or lease or in payments out of production under such a title or lease; or any contract or bond for the sale of any interest in real estate on deferred payments or on installment plans when such real estate is not situated in this state or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing....

Mo.Rev.Stat. § 409.401(*l*).

In a separate statutory section, the Missouri statute defines a "commodity" as:

any agricultural, grain or livestock product or by-product, any metal or mineral (including a precious metal as defined in subdivision (13) of this section), any gem or gemstone (whether characterized as precious, semiprecious or otherwise), any fuel (whether liquid, gaseous. or otherwise), any foreign currency, and all other goods articles, products or items of any kind ...

Mo.Rev.Stat. § 409.800(4).

Clarkson's transactions involved *commodities* and *not securities*. Clarkson's schedules of allegedly unauthorized transactions in the record on appeal lists trades in gold, silver, platinum, copper, sugar, corn, cotton, soybeans, yen, wheat, live cattle, and stock index futures contracts.[2]

---

**2.** In its Local Rule 13(h) statement in opposition to summary judgment below and its answer to Drexel's interrogatories, Clarkson concedes that the allegedly unauthorized trades were in stock index futures, rather than stock index options. *See* Joint Appendix, JA1136, JA1261–1263. Relevant caselaw establishes that stock index futures contracts are commodities and not securities. *See Cohen v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 722 F.Supp. 24, 26 (S.D.N.Y.1989) (in case involving a program which "incorporates a blend of stock index futures and options on futures," court states "[i]t is well settled that commodity futures are not securities ..."); *see also Chicago Mercantile Exchange v. Securities Exchange Comm'n*, 883 F.2d 537, 539 (7th Cir. 1989), *cert. denied, Investment Co. Institute v. Securities Exchange Comm'n*, 496 U.S. 936, 110 S.Ct. 3214, 110 L.Ed.2d 662 (distinguishing between a futures contract and security, and noting: "The Commodity Futures Trading Commission has authority to regulate trading of futures contracts (including futures on securities) and options on futures contracts."); *Mallen v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 605

The subjects of these transactions clearly fall under Missouri's statutory definition of "commodity."

■ Clarkson contends that Missouri's statutory definition of "security" is broad enough to include the "commodities" involved in this case. However, the plain, unambiguous language of the statute relating to fees on transactions in securities clearly omits commodities. Basic principles of statutory construction require that "[t]he words of a statute should be given their normal meaning and effect in the absence of a showing that some other meaning was intended." *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 506 (2d Cir.1991); *see also Connecticut Nat'l Bank v. Germain*, — U.S. —, —, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says."); *Demarest v. Manspeaker*, 498 U.S. 184, 111 S.Ct. 599, 604, 112 L.Ed.2d 608 (1991) (when court "find[s] the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.") Moreover, in *Colautti v. Franklin*, 439 U.S. 379, 392, n. 10, 99 S.Ct. 675, 684, n. 10, 58 L.Ed.2d 596, the Supreme Court stated that "As a rule, [a] definition which declares what a term 'means' excludes any meaning that is not stated." (citation omitted). *See also City of New York v. Exxon*, 697 F.Supp. 677, 684 (S.D.N.Y.1988) (citing *Colautti*). In this case, one of the meanings of security that is not stated in the Missouri definition is "commodities." *See Demarest v. Manspeaker*, 498 U.S. at 190, 111 S.Ct. at 604 (court may interpret statute against unambiguous language only in "rare cases where the application of the statute as written will produce a result demonstrably at odds with the intentions of its drafters." (citations omitted)).

A different Missouri Blue Sky statute, Mo.Rev.St. § 409.810 specifically addresses commodities transactions and makes no provision for attorneys fees. § 409.810 basically prohibits any person from cheating, defrauding, deceiving, misappropriating, or making false report or record "in or in connection with the purchase or sale of, the offer to enter into, or the entry into of, any commodity contract or commodity option." [3] The commodity Blue Sky statute does not include liability for attorneys' fees.

The brokerage agreement Clarkson signed with Drexel was a corporate "Commodities Agreement," and Clarkson admits that it opened the account with the purpose of trading in precious metal commodities. *See* Commodity Account Agreement, Joint Appendix JA1052, Clarkson Complaint, ¶ 4. Clarkson concedes in its Local Rule 13(h) statement in opposition to summary judgment that the contested transactions were in "stock futures or in commodities other than precious metals." *See* Rule 13(h) Statement Filed By Clarkson Construction Co., ¶ 12, Joint Appendix JA1261. Moreover, Drexel's monthly statements of account to Clarkson establish that every contested transaction took place on one of several **commodities** exchanges, which are governed by the federal Commodity Futures Trading Commission and are limited to facilitating commodities transactions.

These factors establish conclusively that none of the contested transactions in this case involved "securities" as that term is defined in § 409.401(*l*) of the Missouri Blue Sky Laws. Because the transactions at issue in this case did not involve "one who offers or sells a security," Clarkson's claim for prepetition attorneys fees' under § 409.411 was properly expunged by the Bankruptcy Court.

C. *No Judgment Existed When the Petition Was Filed:*

The Missouri statute authorizes a person to "sue either at law or in equity to recover

---

F.Supp. 1105, 1107 (N.D.Ga.1985) ("The individual contract for future delivery of a commodity has never been considered a 'security.' ").

**3.** In addition to § 409.810, the Missouri Revenue Statutes §§ 409.826 and 409.828 specifically provide legal and equitable remedies and penalties for violation of § 409.810, or the other sections of the Missouri Blue Sky Laws specifically related to commodities.

the consideration paid for the security, together with interest at eight percent per year from the date of payment, costs, and **reasonable attorneys' fees"** upon an adjudication of liability determining the action. At the date of the bankruptcy the suit had not reached the stage of a judgment of liability. The commencement of the bankruptcy proceedings and the intervention of the automatic stay prevented the Missouri lawsuit from going forward to judgment. § 502(b)(1) of the Bankruptcy Code provides that following objection to a proof of claim, the Bankruptcy Court:

> shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, ...

Clarkson's right to payment of attorneys' fees had not matured as of the date of the filing of the petition. *See* 11 U.S.C. § 101(5)(A) (defining claim in bankruptcy as "right to payment ..."). The Bankruptcy Judge ruled that the claim for attorneys' fees as an adjunct to an adjudication of liability had not matured; there was as yet no right to payment. The court found that Clarkson's statutory attorneys' fee claim lacked an indispensable predicate when the bankruptcy set in—a liability on which it could rest. However, that issue need not be reached on this appeal.

Clarkson had no assertable claim for attorneys' fees under Missouri Revenue Statute § 409.411 because there were no securities transactions to which attorneys' fees would attach, rather the subject matter of the Missouri lawsuit was "commodities."

**AFFIRMED.**