**In re ADLER COLEMAN CLEARING CORP., Debtor.**

**Bankruptcy No. 95–08203.**

United States Bankruptcy Court, S.D. New York.

June 26, 1996.

As Corrected July 1, 1996.

Cleary, Gottlieb, Steen & Hamilton, New York City, for the SIPC Trustee.

## MEMORANDUM DECISION

JAMES L. GARRITY, Jr., Bankruptcy Judge.

In a Securities Investor Protection Act ("SIPA") liquidation proceeding, a person whose claim against the debtor qualifies as a "customer claim" is entitled to preferential treatment in the distribution of assets from the debtor's estate. The mechanism through which such preferential status is implemented is the creation of a fund of customer property distinct from the general estate. *See* 15 U.S.C. § 78*lll* (4) (defining "customer property"). The Securities Investor Protection Corporation ("SIPC") supplements the fund of customer property with amounts of up to $500,000 for each holder of a valid customer claim, with the maximum of $100,000 for the cash portion of that claim. 15 U.S.C. § 78fff–3(a). Holders of allowed customer claims share customer property to the extent of their "net equity"; i.e. the differ-

ence between what the debtor owes the customer and what the customer owes the debtor—with securities and cash balances valued as of the date the liquidation proceeding is commenced. 15 U.S.C. § 78*lll* (11). Other claimants must seek recovery from the assets in the debtor's general estate along with the debtor's other general creditors. 15 U.S.C. § 78fff–2(c)(1).

Edwin B. Mishkin, Esq. is the Trustee of Adler Coleman Clearing Corp. ("debtor") in this SIPA liquidation proceeding. In accordance with procedures established by our March 10, 1996 order ("March Order"), he denied customer claims filed by certain individuals on account of losses allegedly sustained due to their introducing brokers' unauthorized trading in their accounts (the "Unauthorized Trade Claimants"). Twelve of those claimants[1] objected to that determination and by this motion the Trustee seeks an order upholding his findings and expunging those objections. The Securities Investor Protection Corp. ("SIPC") supports the Trustee. For the reasons stated herein, the motion is granted.[2]

### Facts

In *In re Adler Coleman Clearing Corp.*, 195 B.R. 266 (Bankr.S.D.N.Y.1996), we denied customer claims asserted by individuals seeking to recover (1) market losses suffered during this liquidation proceeding, and/or (2) losses allegedly occasioned by their introducing brokers' failure to execute sale orders. In that decision we reviewed the facts underlying this case and the mechanics of a SIPA liquidation proceeding. Familiarity with that discussion is assumed, and except as necessary, those matters will not be repeated herein.

On February 27, 1995 (the "Filing Date"), the Honorable Loretta A. Preska, United

---

**1.** Those claimants are as follows:

> Brian G. Bezanson
> Randy S. Clemens
> Theodore Donnelly
> Alberto J. Favilla
> Thomas Haley
> Alan Holtzman
> Robert A. Jacobs
> Kenneth & Therese Kolis
> Barbara E. Krekstein

> Donald W. Michael
> Chaskiel & Bracha Rabinowitz
> George L. & Theresa Rado

**2.** Our subject matter jurisdiction of these motions and the parties thereto is predicated on 15 U.S.C. §§ 78aaa *et seq.,* and by virtue of the referral and removal of this case to this court in accordance with 15 U.S.C. § 78eee(b)(4).

States District Judge for the Southern District of New York, entered an order pursuant to 15 U.S.C. § 78eee(b) appointing Mishkin as trustee for the liquidation of debtor's business and removing the liquidation proceeding to this court.

Debtor formerly was a member of SIPC and a broker-dealer registered with the Securities Exchange Commission. It acted as a clearing firm handling approximately 61,000 active accounts among 42 introducing brokers. The Unauthorized Trade Claimants had accounts with certain of those brokers. The accounts were frozen as of the Filing Date, although the Trustee has transferred virtually all of them to various third parties, including, without limitation, J.B. Oxford & Company ("Oxford").

In accordance with procedures established by the March Order, the Unauthorized Trade Claimants have filed customer claims against debtor to recover damages allegedly occasioned by their introducing brokers' unauthorized purchase and/or sale of securities on their account. Without taking a position on the merits of the claims, the Trustee denies that they are SIPA customer claims. After hearing argument on the motion we entered an order upholding the Trustee's determination as to, and expunging the objections of, claimants Clemens, Donnelly, Haley, Kolis, Michael and Rado. *See* Order Upholding Trustee's Determinations Denying Certain Customer Claims For Losses Due To Unauthorized Trading By Third Parties And Expunging Objections With Respect To Those Determinations, 95–08203 (May 30, 1996, Garrity, J.). On consent, the motion was adjourned as to claimants Bezanson, Jacobs, Holtzman and Krekstein. This opinion addresses the objections filed on behalf of Albert J. Favilla and Chaskiel and Bracha Rabinowitz.

The Rabinowitzes' introducing broker was Datek Securities Corporation ("Datek"). As of the Filing Date, their account contained miscellaneous securities, a short position of 100 shares of Commodore International Inc. stock and a debit of $86,409.60. The debit arises from Datek's allegedly unauthorized sale of stock options. The Rabinowitzes have claimed an unspecified credit amount as a SIPA customer claim. They also deny owing any sums on account of the unauthorized sale of the options.[3]

Favilla's introducing broker was Stratton Oakmont, Inc. ("Stratton Oakmont"). On or about October 28, 1994, his account contained 1,000 shares of Dr. Pepper/Seven Up Companies ("Dr. Pepper") stock valued at $24,875.00. Notwithstanding that Favilla allegedly did not authorize Stratton Oakmont to purchase or sell securities on his behalf thereafter, as of the Filing Date, his account showed a credit balance of $683.14 and contained 3,000 shares of Select Media Communications ("Select Media") stock. Debtor failed to send Favilla an account statement after October 1994 and did not send him confirmation of either the sale of his Dr. Pepper stock or purchase of the Select Media stock. At all relevant times, debtor's records reflected Favilla's correct address.

Favilla contends that the Trustee must return his account to its position as of October 28, 1994, by taking back the Select Media stock and providing him with 1,000 shares of Dr. Pepper stock. Favilla also contends that the Trustee must "rescind" the transfer of his account to Oxford. He did not press that contention during the hearing and we will not consider it. We note that the account transfers were authorized by court order and are without prejudice to the account holders' rights to move their accounts to a different introducing broker.

The Trustee insists that the Rabinowitzes' and Favilla's customer claims are limited to the securities and credit balance (if any) in their accounts as of the Filing Date and that debtor satisfied those claims when their accounts were transferred to Oxford. He denies that debtor is accountable for Stratton Oakmont's alleged unauthorized sale and purchase of securities, but insists that if it is, the claim can be satisfied only from the assets of debtor's general estate.

---

**3.** The Rabinowitzes' account was transferred to Oxford. We take no position on the enforceability of the disputed debit.

*Discussion*

Introducing firms are broker-dealers without the financial resources or expertise to clear their own securities. Clearing firms are broker-dealers which, by agreement with one or more introducing firms, settle and complete trades. While the introducing firm continues to service the customer accounts, for example, by making investment recommendations or accepting customer orders, they rely upon the clearing firm to settle and complete the trades for the customers. Henry F. Minnerop, *The Role and Regulation of Clearing Brokers*, 48 Bus.Law. 841, 842–43 (1993) ("Minnerop"). A "fully disclosed agreement" is one type of clearing agreement. In those agreements, "the introducing customer's name and address are disclosed to the clearing firm to enable the firm, among other things, to prepare and furnish trade confirmations and monthly statements of account directly to the customer." *Id.* at 843.

 As a general rule, a clearing firm is not liable for losses occasioned by an introducing broker because the clearing firm does not have a fiduciary relationship with the customers of that broker. *See, e.g., Edwards & Hanly v. Wells Fargo Securities, Inc.,* 602 F.2d 478, 484 (2d Cir.1979) ("a clearing agent, is generally under no fiduciary duty to the owners of securities that pass through its hands") (citing *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 n. 29 (5th Cir.1975)), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); *Connolly v. Havens,* 763 F.Supp. 6, 10 (S.D.N.Y.1991) (same); *Dillon v. Militano,* 731 F.Supp. 634, 636 (S.D.N.Y. 1990) (same); *Stander v. Financial Clearing & Services Corp.,* 730 F.Supp. 1282, 1286 (S.D.N.Y.1990) (same). *See also Lester v. Basner,* 676 F.Supp. 481, 483–84 (S.D.N.Y. 1987) (clearing broker is not the agent of introducing broker); *Ahn v. Rooney, Pace, Inc.,* 624 F.Supp. 368, 370–71 (S.D.N.Y.1985) (same).

That rule applies here because debtor performed limited services for Stratton Oakmont and Datek pursuant to identical "Fully Disclosed Clearing Agreements" (the "Clearing Agreements"). In substance, the agreements provide, among other things, that the introducing broker is not debtor's agent, debtor has no control over introduced accounts and debtor acts subject to the introducing broker's instructions. For example, the agreement states:

> The Clearing Agent shall limit its services pursuant to the terms of this Agreement to that of clearing functions and related services expressly set forth herein and the Introducing Firm shall not hold itself out as an agent of the Clearing Agent.... Neither this Agreement nor any operation hereunder shall create a general or limited partnership, association or joint venture relationship between the Clearing Agent and Introducing Firm. The Clearing Agent shall not be bound to make any investigation into the facts surrounding any transaction that it may have with the Introducing Firm on a principal or agency basis or that the Introducing Firm may have with its customers or other persons, nor will the Clearing Agent be under any responsibility for compliance by the Introducing Firm with any laws, rules or regulations which may be applicable to the Introducing Firm.

Clearing Agreements, ¶ 4. Among the "Services to be Performed by the Clearing Agent" are to "[c]lear and settle, and if requested to do so, execute transactions in the Introduced Accounts, and release or deposit monies or securities to or for the Introduced Accounts, *but only upon the Introducing Firm's instructions.*" Clearing Agreements, ¶ 3(a)(i) (emphasis added). Notice of debtor's limited role in the clearing process appears in its Disclosure Statement pursuant to Rules 382 and 405 of the New York Stock Exchange ("NYSE")[4]. It advises that the

---

4. NYSE Rule 405 imposes "know your customer" responsibilities upon NYSE member organizations. Rule 405(1), directs them to "[u]se diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organi-

zation." Under Rule 405(3), member organizations must

> [s]pecifically approve the opening of an account prior to or promptly after the completion of any transaction for the account of or with a customer, provided, however, that in the case of branch offices, the opening of an account

introducing brokers, not debtor, are responsible for insuring that instructions given to debtor are correct, authorized by, and suitable for the customer. *See* Form 7–19, Disclosure Statement Pursuant to SEC Approved Amendments to NYSE Rules 382 and 405, Effective February 19, 1982.

A SIPA liquidation essentially is a bankruptcy proceeding. *S.I.P.C. v. Ambassador Church Fin./Dev. Group*, 788 F.2d 1208, 1210 (6th Cir.), *cert. denied sub nom. Pine Street Baptist Church v. S.I.P.C.*, 479 U.S. 850, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986). Section 78fff(b) incorporates § 502 of the Bankruptcy Code, among other provisions, to the extent consistent with the provisions of SIPA.[5] A court must allow a claim to which objection has been made "except to the extent that … such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(a)(1). *See also In re Sanford*, 979 F.2d 1511, 1513 (11th Cir.1992); *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 979, 981 (Bankr.S.D.N.Y.1992), *aff'd*, 158 B.R. 30 (S.D.N.Y.1993). Outside a SIPA liquidation proceeding, debtor would not be accountable to Favilla or the Rabinowitzes for Stratton Oakmont's and/or Datek's alleged unauthorized trading because debtor is not acting as their agent and does not owe a fiduciary duty to their customers. Those claims are equally unenforceable herein. In *Fine v. Bear, Stearns & Co.*, 765 F.Supp. 824 (S.D.N.Y.1991), the court upheld an arbitration panel's dismissal of a damage claim by a customer against a clearing broker alleging breach of contract, negligence, conversion and RICO violations, 18 U.S.C. § 1961 (1988), in connection with unauthorized transfers from his account. The clearing broker executed a transfer of funds from a customer account to an account controlled by a representative of an introducing broker. *Id.* at 826–27. The clearing broker had acted on the basis of authorization papers on which the representative had forged the customers' signatures. *Id.* After a three day hearing, the arbitration panel dismissed the claim. *Id.* at 827. In upholding that determination, the court found, among other things, that the evidence supported the clearing broker's "affirmative defense that it relied on instruc-

---

for a customer may be approved by the manager of such branch office but the action of such branch office manager shall within a reasonable time be approved by a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1). The member, general partner, officer or designated person approving the opening of the account shall, prior to giving his approval, be personally informed as to the essential facts relative to the customer and to the nature of the proposed account and shall indicate his approval in writing on a document which is part of the permanent records of his office or organization.

NYSE Rule 405(3). In 1982, Rules 382 and 405 were amended to free clearing firms on a fully disclosed basis of all Rule 405 responsibilities with respect to introduced accounts and designated NYSE 382 as the "exclusive exchange rule which concerns itself with the [clearing] relationship." Minnerop, *supra* p. 7, at 848–49 (quoting NYSE Information Memo, No. 82–12 (March 5, 1982)). *See also* Exchange Act Release No. 34–18497 (Feb. 19, 1982) (the 1982 amendment to Rule 382 clarified "the responsibilities of broker-dealers relative to the handling of customer accounts that are introduced by one broker-dealer to another under a fully disclosed carrying agreement"). Amended Rule 382(b) provides:

Each agreement in which accounts are to be carried on a fully disclosed basis shall specifi-

cally identify and allocate the respective functions and responsibilities of the introducing and carrying organizations, which agreement shall, at a minimum, address each of the following functions:

(1) opening, approval and monitoring of accounts
(2) extension of credit
(3) maintenance of books and records
(4) receipt and delivery of funds and securities
(5) safeguarding of funds and securities
(6) confirmations and statements
(7) acceptance of orders and execution of transactions.

NYSE Rule 382(b). Under Rule 382(c), every customer whose account is introduced on a fully disclosed basis "shall be notified in writing upon the opening of his account of the existence of the agreement and the relationship between the introducing and carrying organization."

**5.** Section 78fff(b) states:

To the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though it were being conducted under chapters 1, 3, 5 and subchapters I and II of chapter 7 of title 11.

15 U.S.C. § 78fff(b).

tions received from [the representative] in effecting the wrongful transactions." *Id.* at 828. *See also Dillon v. Militano,* 731 F.Supp. at 636 (primary liability under § 10(b) of the Exchange Act of 1934 not imposed on clearing broker for fraud of introducing broker because clearing broker not a fiduciary to introducing broker's customers). Unauthorized trading losses may constitute a customer claim under SIPA only if it was conducted by debtor because, by definition, "customer property" includes "the proceeds of any such property transferred by the debtor, including property unlawfully converted." 15 U.S.C. § 78*lll* (4). Those provisions are inapplicable because debtor is not alleged to have unlawfully converted the property of either the Rabinowitzes or Favilla.

■ Favilla also asserts his customer claim on the basis of debtor's alleged fraudulent concealment of the trade confirmations generated in connection with the sale and purchase of his Dr. Pepper and Select Media stock, respectively, and its alleged breach of § 8 of the Account Information and Customer Agreement among himself, debtor and Stratton Oakmont, due to debtor's failure to send him monthly account statements or the relevant trade confirmations. Even assuming, *arguendo,* the truth of Favilla's assertions, and that debtor could be held accountable for the damages Favilla suffered, the resulting claim would not be a SIPA customer claim. *In re MV Securities, Inc.,* 48 B.R. 156, 160–61 (Bankr.S.D.N.Y.1985) (SIPA does not protect customer claims based on fraud or breach of contract); *S.E.C. v. Howard Lawrence & Co., Inc.,* 1 B.C.D. 577, 579 (Bankr.S.D.N.Y.1975) (same). *See, e.g., S.E.C. v. S.J. Salmon & Co., Inc.,* 375 F.Supp. 867 (S.D.N.Y.1974) (investor's recision claim based upon fraudulent inducement not a SIPA customer claim; customer would have to pursue claim against broker as a general unsecured creditor).

### Conclusion

Based on the foregoing, the Trustee's motion is granted. The Trustee is directed to settle an order consistent with the foregoing. He is also directed to serve a copy of this Memorandum Decision on the Rabinowitzes and Favilla.