VICTOR MARRERO, United States District Judge.
*269 Plaintiff Sotheby's, Inc. ("Sotheby's") filed this action against defendant Wendy Stone ("Stone") raising a contract dispute regarding payment for the sale of certain works of art. ("Complaint," Dkt. No. 1.) Stone answered the Complaint and asserted four counterclaims against Sotheby's (the "Counterclaims"). ("Answer and Counterclaims," Dkt. No. 21.)
Now before the Court are the pre-motion letters submitted by Sotheby's seeking a conference to discuss a motion to dismiss the Counterclaims. The Court construes such letters as a motion by Sotheby's to dismiss the Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (" Rule 12(b)(6)") (the "Sotheby's Motion"). For the reasons set forth below, the Sotheby's Motion is GRANTED in part and DENIED in part.
I. BACKGROUND [1]
The Complaint alleges that Stone owes Sotheby's payment for two works of fine art (the "Works") that she bought from Sotheby's at an auction in 2015 (the "Auction"). Stone is the co-executor, along with her sister, Laura Maisel ("Maisel"), of the estate of Gladys Reiner (the "Consigning Estate"), which consigned the Works to Sotheby's for sale at the Auction. Stone signed a "Consignment Agreement" on behalf of the Consigning Estate. That agreement included a term barring Stone, in her individual capacity, from bidding on the Works and another term requiring that changes to the agreement be made in writing.
The Complaint further alleges that, prior to the Auction, Stone sought and received permission from both Sotheby's and the Consigning Estate to bid on the Works, and that she allegedly received such permission under false pretenses. To bid on the Works, Stone signed an interested party bidder letter (the "Interested Bidder Letter"), as well as an absentee bid form (the "Absentee Form"). According to Sotheby's, Stone obtained permission to bid on the Works so that she could buy the Works at lower-than-market prices. Ultimately, Stone placed the highest bids for the Works at the Auction, but Stone subsequently advised Sotheby's that she wished to cancel her purchase of the Works. Sotheby's did not agree to cancel the sale. Thus, Stone allegedly owes Sotheby's over one million dollars for the Works. Based on the foregoing allegations, Sotheby's brings two causes of action against Stone seeking monetary relief for (1) breach of contract, and (2) fraudulent inducement and concealment.[2]
*270 On November 8, 2018, Stone answered the Complaint and asserted four counterclaims against Sotheby's.[3] In her Answer and Counterclaims, Stone alleges that she is not liable to Sotheby's because Sotheby's -- specifically, its employee, Rebecca Lockwood ("Lockwood") -- misrepresented the terms of the sale of the Works. According to Stone, Lockwood promised Stone that Stone would be responsible for paying only half of the hammer price and half of the buyer's premium for the Works. Stone further alleges that Sotheby's subsequently made additional false representations to Stone: Sotheby's informed Stone that it would cancel the sale of the Works. Stone alleges that this false representation caused her to enter into a written agreement with the Consigning Estate to purchase the Works directly from the estate, an agreement which Stone alleges she could not perform when Sotheby's refused to cancel the sale of the Works.
Based on the preceding allegations, Stone asserts four counterclaims against Sotheby's: (1) breach of fiduciary duty for misrepresenting the terms of the sale of the Works; (2) breach of contract for charging Stone the full hammer price and the full buyer's premium for the Works, as opposed to half of each; (3) fraud and fraudulent inducement for the false statements upon which Stone reasonably relied in entering into a separate agreement with the Consigning Estate; and (4) tortious interference with contract for interfering with the contract between Stone and the Consigning Estate for the purchase of the Works.
On November 29, 2018, Sotheby's wrote to Stone, arguing that the Counterclaims should be dismissed. (See "November 29 Letter," Dkt. No. 31.) Generally, Sotheby's argues that Stone not only fails to allege damages, but also is incapable of proving damages. (See id. at 1.) Next, Sotheby's contends that each of the Counterclaims is deficient. First, Sotheby's asserts that the breach of fiduciary duty counterclaim warrants dismissal because Stone has failed to allege the existence of a fiduciary relationship between herself and Sotheby's, the existence of which is a requisite element of the claim. Sotheby's further argues that the breach of fiduciary duty counterclaim warrants dismissal because Stone has not pled the claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure (" Rule 9(b)"), and because the counterclaim is duplicative of the breach of contract counterclaim.
Second, Sotheby's maintains that the breach of contract counterclaim fails to *271 state a claim, because the later-in-time Absentee Form -- which Stone signed and which incorporated a "Conditions of Sale" document -- necessarily supersedes any agreement by Sotheby's to charge Stone only half of the hammer price and half of the buyer's premium. Third, Sotheby's argues that the fraud counterclaim should be dismissed because it is duplicative of the breach of contract claim. Finally, Sotheby's contends that the tortious interference with contract counterclaim is deficient because Stone fails to allege sufficient facts to support two of the four elements of a claim for tortious interference with contract -- that the defendant intentionally procured a third-party's breach of the contract without justification, and actual breach of the contract.
On December 6, 2018, Stone responded to the November 29 Letter, arguing that the Counterclaims should not be dismissed. (See "December 6 Letter," Dkt. No. 32.) The letter begins by noting that Stone "will stipulate to withdrawing her breach of fiduciary duty claim without prejudice." (Id. at 1.) Stone then proceeds to argue that each of the remaining Counterclaims is sufficient to survive a motion to dismiss. First, Stone contends that the Conditions of Sale document was not provided by Sotheby's to Stone either before or after the Auction -- thus making the terms in the Conditions of Sale document unenforceable against Stone. Second, Stone argues that her counterclaim for fraud and fraudulent inducement should be maintained because the "false promise to cancel the sale created a duty to Ms. Stone who then acted to her detriment independent of the agreement the parties had regarding the Auction." (Id. at 2.) Stone requests leave to amend the Counterclaims to clarify the distinction in the bases for this counterclaim and her counterclaim for breach of contract. Finally, Stone argues that her counterclaim for tortious interference with contract is sufficient to state a claim because it alleges that the decision by Sotheby's not to cancel the sale of the Works caused Stone, in turn, to breach her contract with Maisel to purchase the Works directly from the Consigning Estate.
On December 20, 2018, Stone sent an additional letter to Sotheby's. (See "December 20 Letter," Dkt. No. 38.) Stone clarified that "[a]lthough Sotheby's failed to provide a copy of the Conditions of Sale to Ms. Stone at the time she signed the [Absentee] Form," Stone no longer contests that she received a copy of the Conditions of Sale document. Stone therefore noted that she "hereby withdraw[s] the allegation contained in [the December 6 Letter] that [she] did not receive a copy of the Conditions of Sale." (Id. )
By letter dated June 14, 2019, Sotheby's informed the Court that it believes a motion to dismiss the Counterclaims remains warranted. ("June 14 Letter," Dkt. No. 48.) On June 24, 2019, Stone responded to the June 14 Letter and notified the Court of her continued opposition to a motion to dismiss the Counterclaims.[4] ("June 24 Letter," Dkt. No. 49.) The Court has reviewed *272 and considered both the June 14 Letter and the June 24 Letter in reaching its decision set forth below.
The Court now construes the November 29 Letter and June 14 Letter from Sotheby's as a motion to dismiss the Counterclaims pursuant to Rule 12(b)(6).
II. LEGAL STANDARD
Rule 12(b) (6) provides for dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint [or counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A claim should be dismissed if the party has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a claim for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.
The task of a court is "to assess the legal feasibility of the complaint [or counterclaim], not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 573-74 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006) ; accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). The requirement that a court accept the factual allegations in the claim as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.
In passing upon a motion to dismiss, the Court must draw reasonable inferences and resolve any doubts in favor of the non-moving party. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Furthermore, the Court may consider documents that were either incorporated by reference into the claims or "integral" thereto. See id. at 153. "When allegations contained within the complaint [or counterclaims] are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint [or counterclaims] as true." Rozsa v. May Davis Grp., Inc., 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002).
III. DISCUSSION
A. BREACH OF FIDUCIARY DUTY COUNTERCLAIM
To state a claim for breach of fiduciary duty under New York law, a party must allege three elements: "(1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." Meisel v. Grunberg, 651 F. Supp. 2d 98, 114 (S.D.N.Y. 2009) (citing Whitney v. Citibank, N.A., 782 F.2d 1106, 1115 (2d Cir. 1986) ).
In her December 6 Letter, Stone notes that "although [she] believes that her claim for breach of fiduciary duty would survive a motion to dismiss ... [she] is willing to stipulate to the withdrawal of her breach of fiduciary duty claim against Sotheby's without prejudice pending discovery." (December 6 Letter at 3.) Accordingly, this *273 Order will not analyze Sotheby's arguments in favor of dismissing the breach of fiduciary duty counterclaim in depth, except to make a brief point.
The Court is not persuaded that a fiduciary relationship existed between Sotheby's and Stone in her individual capacity. Based upon the pleadings and exhibits properly before the Court, it does not appear that such a relationship existed, because "[i]n general, 'an auction house acts as an agent on behalf of its consignors, not its bidders.' " Sotheby's, Inc. v. Minor, No. 08 Civ. 7694, 2009 WL 3444887, at *9 (S.D.N.Y. Oct. 26, 2009). In fact, the Interested Bidder Letter, which Stone signed, expressly states that Stone would bid on the Works "in [her] personal capacity, and not in [her] capacity as an executor of [the Consigning Estate]." (November 29 Letter at Exhibit A.) Furthermore, none of the facts referenced by Stone in her June 24 Letter -- including Stone's request for advice from Sotheby's, as well as Stone receiving VIP passes from Sotheby's -- would give rise to a fiduciary relationship, because "even allegations that a plaintiff relied on a defendant's expertise in a particular field are insufficient by themselves to survive dismissal." World Wrestling Entm't, Inc. v. Jakks Pac., Inc., 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007), aff'd, 328 F. App'x 695 (2d Cir. 2009).
Accordingly, the Court grants the motion by Sotheby's to dismiss Stone's counterclaim for breach of fiduciary duty.
B. BREACH OF CONTRACT COUNTERCLAIM
"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).
Sotheby's argues that Stone's breach of contract counterclaim should be dismissed because the later-in-time Absentee Form and Conditions of Sale documents necessarily supersede any agreement by Sotheby's to charge Stone only half of the hammer price and half of the buyer's premium for the Works. In her December 6 Letter, Stone responded to this argument by contending that Sotheby's did not provide her with the Conditions of Sale document either before or after the Auction. In her December 20 Letter, however, Stone withdrew her allegation that she did not receive a copy of the Conditions of Sale document. Then, in her June 24 Letter, Stone contends both that she received the Conditions of Sale document only in her capacity as co-executor of the Consigning Estate (and not in her individual capacity) and that "[the December 20 Letter] did not state that Ms. Stone received the Conditions of Sale prior to the American Art auction, which concerns this litigation." (June 24 Letter at 2 (emphasis in original).)
The threshold question at this point is whether the Absentee Form and Conditions of Sale documents supersede any prior agreement between Sotheby's and Stone. Although the Complaint is silent as to the date of the Auction, the Interested Bidder Letter indicates that the Auction took place on November 18 and 19, 2015. (See November 29 Letter at Exhibit A.) The Counterclaims do not allege an exact date for the purported oral agreement between Lockwood and Stone. Presumably, however, Lockwood and Stone entered into that oral agreement prior to the date of the Auction, an assumption which is bolstered by the allegation in the Answer and Counterclaims that "[a]fter the expiration of the withdrawal period, but before the Auction, Stone contacted Rebecca Lockwood ...." (Answer and Counterclaims *274 ¶ 59 (emphasis added).) Stone signed the Absentee Form, in turn, on November 18, 2015. (See November 29 Letter at Exhibit B.) The Court thus concludes that the Absentee Form was later in time than any contrary oral agreement that may have existed between Lockwood and Stone.
Under New York law, "a subsequent contract regarding the same subject matter supersedes the prior contract." CreditSights, Inc. v. Ciasullo, No. 05 Civ. 9345, 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007). To determine whether "a particular provision is superseded by a provision in a subsequent contract, the Court considers: (1) whether there is an integration and merger clause that explicitly indicates that the prior provision is superseded; (2) whether the two provisions have the same general purpose or address the same general rights; and (3) whether the two provisions can coexist or work in tandem." A & E Television Networks, LLC v. Pivot Point Entm't, LLC, No. 10 Civ. 9422, 2013 WL 1245453, at *10 (S.D.N.Y. Mar. 27, 2013) (internal quotation marks omitted).
Here, there does not appear to be an explicit merger or integration clause in either the Absentee Form or the Conditions of Sale document. However, both the alleged oral agreement, on the one hand, and the Absentee Form and Conditions of Sale documents, on the other hand, relate to Stone bidding on the Works at the Auction and the price she would be obligated to pay for the Works if she were the highest bidder. The alleged oral agreement between Lockwood and Stone relates to Stone paying half of the hammer price and half of the buyer's premium for the Works. The Absentee Form incorporated the Conditions of Sale document (see November 29 Letter at Exhibit B ("I agree to be bound by Sotheby's 'Conditions of Sale' ")), which provided that the Conditions of Sale document is the "entire agreement with the purchaser" and included the obligation for Stone to pay the "full purchase price" (see id. at Exhibit C). The Court finds that these two agreements relate to the same subject matter. Moreover, the two agreements cannot coexist or work in tandem because they contemplate entirely different, indeed, conflicting, results (i.e., Stone being obligated to pay the full price or half the price). The Court therefore concludes that the later-in-time Absentee Form and Conditions of Sale documents supersede the purported oral agreement between Lockwood and Stone.
Nevertheless, in her June 24 Letter, Stone raises substantial factual questions regarding the timing of her receipt of the Conditions of Sale document. Because resolution of the breach of contract counterclaim depends on findings of fact regarding whether and, if so, when Stone received the Conditions of Sale document, the Court finds that it would be premature to dismiss Stone's breach of contract counterclaim at this time.
Accordingly, the Court denies the motion by Sotheby's to dismiss Stone's counterclaim for breach of contract.
C. FRAUD AND FRAUDULENT INDUCEMENT COUNTERCLAIM
Under New York law, a party claiming fraud or fraudulent inducement must allege "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." Eurycleia Partners, LP v. Seward & Kissel, LLP, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009). To plead such a claim, a party must also satisfy the heightened pleading standards of Rule 9(b), which applies to any claim that "sounds in fraud." Rombach v. Chang, 355 F.3d 164, 167, 170-71 (2d Cir. 2004).
*275 Sotheby's argues that Stone's fraud and fraudulent inducement counterclaim should be dismissed because it is duplicative of the breach of contract counterclaim. In her December 6 Letter, Stone responds that her fraud counterclaim is not duplicative, because it stems from the false promise by Sotheby's to cancel the sale of the Works, as opposed to the purported oral agreement to charge Stone half of the hammer price and half of the buyer's premium for the Works. Stone therefore requests leave to amend to clarify the distinction in the bases for this counterclaim and her counterclaim for breach of contract. But in her June 24 Letter, Stone appears to contend that the basis for her fraud and fraudulent inducement counterclaim is not the promise by Sotheby's to cancel the sale of the Works, but rather the "advice" given by Sotheby's to Stone to bid on the Works in her personal capacity. (See June 24 Letter at 3.)
"[A] cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract." First Bank of the Ams. v. Motor Car Funding, Inc., 257 A.D.2d 287, 690 N.Y.S.2d 17, 21 (1st Dep't 1999). But where "the promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative of the claim for breach of contract." Fairway Prime Estate Mgmt., LLC v. First Am. Int'l Bank, 99 A.D.3d 554, 952 N.Y.S.2d 524, 527 (1st Dep't 2012).
The Court first turns to Stone's original contention that the fraud counterclaim is premised on the promise by Sotheby's to cancel the sale of the Works. Even if the Court were to accept this contention as true, the Court finds that the fraud counterclaim "concern[s] the performance of the contract itself," id. -- namely, the performance of the contract to sell the Works to Stone as the highest bidder at the Auction. Because the Court determines that the fraud counterclaim is premised on the same agreement as the breach of contract counterclaim, it finds that the fraud counterclaim is duplicative of the breach of contract counterclaim.
The Court next turns to Stone's newer contention that the fraud counterclaim is premised on the advice allegedly given by Sotheby's to Stone to bid on the Works in her personal capacity. Even if the Court were to accept this contention as true, the Court finds that the fraud counterclaim cannot survive a motion to dismiss because it does not plead "a breach of duty separate from, or in addition to, a breach of the contract," First Bank, 690 N.Y.S.2d at 21, since Stone has failed to allege the existence of a fiduciary relationship between herself, in her individual capacity, and Sotheby's, see supra Section III.A.
Accordingly, the Court grants the motion by Sotheby's to dismiss Stone's counterclaim for fraud and fraudulent inducement.
D. TORTIOUS INTERFERENCE WITH CONTRACT COUNTERCLAIM
"To state a contract-interference claim under New York law, a plaintiff must demonstrate the existence of a valid contract, the defendant's knowledge of the contract's existence, that the defendant intentionally procured a contract breach, and the resulting damages to the plaintiff." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 124-25 (2d Cir. 2008).
Sotheby's argues that the tortious interference with contract counterclaim should be dismissed because it fails to allege sufficient facts to support two of the four elements of such a claim. Specifically, Sotheby's contends that Stone fails to allege that Sotheby's intentionally procured a third *276 party's breach of contract, and actual breach of that contract. Stone responds that her counterclaim sufficiently alleges that the refusal by Sotheby's to perform its agreement to cancel the sale of the Works in turn forced Stone to breach her contract with Maisel to purchase the Works directly from the Consigning Estate.
Although the Court, at the motion to dismiss stage, must accept the factual allegations as true, see Iqbal, 556 U.S. at 678, 129 S.Ct. 1937, the tortious interference with contract counterclaim, as pled, does not allege sufficient facts to establish each of the elements of the claim. While the Answer and Counterclaims alleges that Stone had a contract with Maisel to purchase the Works directly from the Consigning Estate (the first element), Stone does not allege that Sotheby's was aware, or had knowledge, of that contract (the second element), nor that Sotheby's intentionally procured a breach of the contract between Stone and Maisel (the third element). Stone alleges that "[Sotheby's] knew of the valid contract between Stone and the Consigning Estate" and that "[Sotheby's]'s interference with the contract was intentionally designed to disrupt the valid contract between Stone and the Consigning Estate." (Answer and Counterclaims ¶¶ 102, 104.) These assertions are legal conclusions for which Stone does not allege any supporting facts on which they are grounded. Because the requirement that a court accept the factual allegations in counterclaims as true does not extend to bare legal conclusions, see Iqbal, 556 U.S. at 678, 129 S.Ct. 1937, the Court finds Stone's counterclaim for tortious interference with contract to be deficient.
Accordingly, the Court grants the motion by Sotheby's to dismiss Stone's counterclaim for tortious interference with contract.
E. DAMAGES
Sotheby's argues that each of the Counterclaims should be dismissed because "[Stone] has not offered damages calculations for any of her Counterclaims," and the Counterclaims therefore fail to meet the requirements of 28 U.S.C. Section 1332. (November 29 Letter at 1.) Sotheby's correctly notes that the Counterclaims do not allege damages with any specificity. Instead, Stone merely alludes to her damages in a conclusory fashion: for Counterclaim I, "Stone has suffered general and consequential damages" (Answer and Counterclaims ¶ 86); for Counterclaim II, "Stone suffered damages" (id. ¶ 92); and for Counterclaims III and IV, "Stone has suffered damages in an amount to be determined at trial" (id. ¶¶ 98, 99). The Court therefore considers Stone's failure to allege damages for the first, third, and fourth Counterclaims to be an additional basis warranting their dismissal.
F. LEAVE TO AMEND
Rule 15 of the Federal Rules of Civil Procedure provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court of Appeals for the Second Circuit has maintained that leave to amend is "discretionary," but should be "freely given." Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 333 (2d Cir. 2000). Nevertheless, courts may deny leave to amend when amendment would be futile, including when the "amended portion of the [claim] would fail to state a cause of action." Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000).
The Court is not persuaded that it would be futile for Stone to be given the opportunity to amend her first and fourth counterclaims (for breach of fiduciary *277 duty and tortious interference with contract, respectively) by adding new factual allegations to restate the claims dismissed by this Order. However, the Court finds that it would be futile for Stone to replead the third counterclaim (for fraud and fraudulent inducement), because that claim would continue to be duplicative of Stone's breach of contract counterclaim, which the Court, as discussed supra Section III.B, declines to dismiss.
Accordingly, the Court will afford Stone the opportunity to amend her first and fourth counterclaims.
IV. ORDER
Upon review of the pleadings and correspondence in the record, and for the reasons described above, it is hereby
ORDERED that the motion so deemed by the Court as filed by plaintiff and counterclaim-defendant Sotheby's, Inc. to dismiss (Dkt. Nos. 31, 48) the counterclaims ("Counterclaims," Dkt. No. 21) of defendant and counterclaim-plaintiff Wendy Stone ("Stone") is GRANTED as to the first, third, and fourth counterclaims, and DENIED as to the second counterclaim; and it is further
ORDERED that Stone is granted leave to file amended Counterclaims as to the first and fourth Counterclaims within two weeks of the date of entry of this Order.
SO ORDERED.

Except as otherwise noted, the factual background below derives from the Complaint, the Answer and Counterclaims, and the facts there pleaded, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See infra Part II. Except where specifically quoted, no further citation will be made to the Complaint or the Answer and Counterclaims.

The parties previously exchanged letters regarding Stone's contemplated motion to dismiss the Complaint. (See Dkt. Nos. 11-14.) On October 1, 2018, the Court held a telephone conference with counsel for both parties during which it expressed its preliminary view that the Complaint does not warrant dismissal. (See Dkt. Minute Entry for 10/1/2018.) Following the telephone conference, Stone notified the Court that she intended to proceed with a motion to dismiss the breach of contract claim. (See "October 8 Letter," Dkt. No. 15.) Sotheby's responded to the October 8 Letter, contending that Stone's arguments in favor of dismissing the breach of contract claim were meritless. (See "October 9 Letter," Dkt. No. 16.) The Court then held a second telephone conference on October 23, 2018, during which it again expressed its preliminary views. The Court further directed Stone to notify the Court of her intentions regarding a motion to dismiss, and Sotheby's agreed to the voluntary withdrawal of its fraud claim pending resolution of Stone's motion to dismiss. (See Dkt. Minute Entry for 10/23/2018.) Stone subsequently notified the Court that she would not be proceeding with a motion to dismiss the Complaint. (See Dkt. No. 19.)

On November 15, 2018, Stone filed a Third-Party Complaint against Laura Maisel, as the co-executor of the estate of Gladys Reiner, and Munley & Meade PLLC ("Munley & Meade," and, together with Laura Maisel, the "Third-Party Defendants"). (See "Third-Party Complaint," Dkt. No. 23.) Because Stone's claims against the Third-Party Defendants are the subject of two letter exchanges regarding contemplated motions to dismiss the Third-Party Complaint, this Order will not address those claims.

The Court notes that, in her June 24 Letter, Stone raises arguments that do not appear to be supported by the record. For example, Stone argues that "[t]he catalogue deadline, the writing confirming the deadline, and the co-executors' review of the advanced proof of the catalogue were all conditions precedent" to the Consignment Agreement. (June 24 Letter at 1-2.) Regarding the catalogue deadline and the written confirmation thereof, Stone herself filed e-mails evidencing compliance by Sotheby's with these conditions. But Stone points to no provision in the Consignment Agreement requiring Sotheby's to provide the co-executors with advanced review of the catalogue proofs. This incident calls for greater caution to ensure the accuracy of all future submissions to the Court.